## STEPHEN CHASE vs. JOHN BRADLEY & Trustees.

If an order be drawn and accepted, on condition that when paid, the amount should be indorsed upon a note, then in the hands of the payee, on which the drawers were liable, the payee is not entitled to receive payment of such order, after he has assigned over and indorsed such order to a third person; and therefore if the acceptor of the order be summoned in a trustee process, as the trustee of the payee, after he has transferred the note to another, and incapacitated himself from complying with the condition, the trustee must be discharged.

One summoned as trustee, may make the affidavit of another person a part of his answer, if he is willing to swear that he believes it to be true.

And in determining whether the trustee shall be charged or discharged, his answer must be taken to be true.

If one contracts to pay a certain sum per thousand for timber, " to be scaled according to the usual *Kennebec* survey" by a person to be appointed by the seller, whose survey was to be conclusive as to the amount; such survey will not be conclusive, unless it be made in conformity with the *Kennebec* survey.

THE writ was served upon the alleged trustees, *William Weston,* *Richard Clay, Henry Jewell,* and *Bradbury F. Dinsmore,* on *June* 23, 1838. From their disclosures and the papers annexed as part of their answers, it appeared that *John Bradley,* the defendant, *January* 14, 1835, conveyed a township of land, called the *Attian Pond Township,* to *Underwood, Davis* and *Colby,* and as part consideration therefor took their note dated that day, payable to him or his order, *June* 1, 1837, for $13750, with a mortgage of the same premises to secure the note. Soon afterwards an association of individuals acting in the name of the *Attian Land Association,* purchased of *Underwood, Davis* and *Colby* the same township, and engaged with them to pay and take up that note to *Bradley.* The *Attian Association,* on the first day of *December,* 1835, entered into a contract with *William Weston,* who is summoned as trustee of *Bradley,* wherein it was agreed that in the winter following *Weston* should cut timber from the township at three dollars per thousand feet, board measure, the timber to be scaled on the tract or at the landing, according to the usual *Kennebec* survey, by a person to be appointed by the association, who should render a true account of the number of feet in each log,

and his account should be conclusive as to the amount of stump-age. The stumpage for all the timber cut under the permit was to be paid for, one half in thirty days, and the residue in sixty days after the timber shall have run to the booms, and the whole to be paid for when seven eighths thereof had come to the booms. The *Association* were to have a lien upon the timber for payment of the stumpage. Of the timber thus cut, at the time of the service of the writ, *Weston* says, that about fifteen hundred thousand feet had come to the several booms. He states, that the whole amount of timber cut, *according to the Kennebec survey,* was three millions and two thirds of a million feet, and admits that *Samuel F. Weston,* appointed by the *Association,* made a much larger amount, but says that *S. F. Weston* was an incompetent person to make the survey and was wholly unacquainted with the usual *Kennebec* survey, and estimated the timber at a much greater amount than the *Kennebec* survey would warrant, and that he did not consider himself bound by the survey of *S. F. Weston.* On *March* 14, 1836, *William Weston* made an agreement with *Clay* and *Jewell,* who are also summoned as trustees, by which the latter were to purchase the logs, and were to pay to the *Association* the amount due for the stumpage of the logs according to the agreement with *Weston,* and to remove the lien upon the timber, and were to pay the balance to *Weston. Dinsmore,* also summoned as trustee, afterwards came in, by an agreement with *Clay* and *Jewell,* as their associate.

The *Attian Association,* on the 18th of *April,* 1837, drew an order on *Weston,* directing him to pay to *John Bradley,* out of the proceeds of the logs cut on the *Attian Township,* fifteen thousand dollars, and take his receipt for the same, with this condition at the close — " provided however, you shall see that whatever sums you shall pay said *Bradley,* and take his receipt therefor, shall be indorsed upon a certain note of hand for thirteen thousand seven hundred and fifty dollars, signed by *Benjamin Underwood, Amos Davis* and *Abraham Colby,* and payable to said *John Bradley* on the first day of *June,* 1837." On the 28th of *August,* 1837, this order was presented to *Weston,* and by him accepted in this man-ner. " Accepted to be paid the within named *Bradley,* provided the sum within mentioned shall be due the *Attian Land Associa-*

*tion* for logs cut on the *Attian Pond Township* agreeably to the terms of the contract made by me with them." *Weston* gave notice to *Clay* and *Jewell* of the drawing and acceptance of this order, and directed them to make payment accordingly. On the third of *August*, 1837, the *Attian Association* drew another order on *Weston* in favor of *Bradley*, for the sum of $1573, " being the balance above the former order to said *Bradley* of $15,000, due for stumpage of timber cut by you on the *Attian Township*." This was accepted by *Weston, August* 28, 1837, " to be paid to the above named *Bradley*, provided the sum mentioned shall be due on the contract with the *Attian Land Associates* after paying an order this day accepted for fifteen thousand dollars according to the terms of said acceptance drawn on me by the *Attian Land Associates* in favor of said *Bradley*, dated *April* 18, 1837." On *May* 28, 1838, *Clay* and *Jewell* paid *Bradley* $377,04, and took his receipt therefor. The alleged trustees disclosed, that on the day on which they made their answer, *Feb.* 19, 1839, *Messrs. Fessenden & Deblois* shew them the note from *Underwood, Davis* and *Colby* to *Bradley*, before mentioned, on which note were the following indorsements. " *John Bradley.*" " Pay *J. C. Brewer, Esq.* or order. *Geo. F. Cook,* Cashier." " Pay *C. Chute,* Cashier, or order. *J. C. Brewer,* Cashier." A pen had been drawn across the names of *Cook* and *Brewer.* At the same time *Messrs. Fessenden & Deblois,* counsellors at law, exhibited their affidavit to the supposed trustees, which the trustees aver they believe is true, stating that they received that note from the President, Directors and Company of the *Oriental Bank* for collection, as the property of the Bank, long before the fifteenth day of *June,* 1838, and had ever since retained the note in their possession as the property of the *Oriental Bank.*

If the alleged trustees are to pay for the timber cut according to the survey of *S. F. Weston* on the land where it was cut, if the same should never reach the boom, the sum due is sufficient to pay both orders. But if they are only to pay for the quantity of timber, estimated according to the true *Kennebec* survey, as they aver; or if they are held to pay only for the timber which had actually come to the booms at the time when the service was made upon them, by either survey, they were not liable to any one for a sufficient amount to pay the order for fifteen thousand dollars,

*H. B. Osgood,* for the plaintiff, contended, that the trustees should be charged. Drawing the orders on *Weston* by the *Attian Association* for the whole amount due in favor of the defendant, was an equitable assignment thereof to him. *Robbins* v. *Bacon,* 3 *Greenl.* 346. A trustee process is like a bill in equity. 1 *Gallison,* 367. The proviso in the first order is merely directory, and is not an essential part of the contract, so as to discharge the trustees. The notice to the trustees by the affidavit is no sufficient evidence of any assignment of the note by *Bradley.* But if it can be considered as such, it was made long after it was due. The service of the trustee process is equivalent to a payment at that time to *Bradley,* and would be good against the holders of the note. The payment therefore on this process pays the debt of the *Association* to *Bradley,* and they cannot be injured, and it pays *Bradley's* debt to the plaintiff. If the note has been indorsed, the indorsees may collect it of the makers or indorser, and so justice be done to all parties. If *Bradley* had indorsed the note, he had deprived himself of the ability to comply with the proviso in the first order, and the fund therefore could not go to the payment of that note, and must be holden to pay the second order, which was drawn without condition. In any view of the first order, the trustees must be holden on the second order, drawn without condition, because they had funds to pay both. They are bound by the survey of the scaler, appointed by the Association, made where the timber was cut, by the express terms of the contract. They are to pay stumpage for the amount of timber cut there, if it never reached the booms. Reaching the booms only fixed the time of payment. The transfer of the note to the *Oriental Bank,* if it is to be considered as made, does not in any manner transfer the order, or the amount mentioned therein; and therefore the trustees are to be charged in the same manner as if *Bradley* now held the note. *Whitaker* v. *Sumner,* 20 *Pick.* 399. But it is not necessary now to determine the amount for which they are to be charged. They are to be charged generally, if held for any thing. *Winchester* v. *Titcomb,* 17 *Pick.* 435.

*Fessenden & Deblois* argued for the trustees, and contended, that they ought to be discharged. The assignment of the note by *Bradley* to the *Oriental Bank,* carries with it in equity the pro-

perty pledged or mortgaged to the amount of the note. 2 *Burrow,* 969; *Green* v. *Hart,* 1 *Johns. R.* 580; *Powell on Mort.* 1115; 17 *Serg. & R.* 400; *Willard* v. *Harvey,* 5 *N. H. Rep.* 252; *Jackson ex dem. Barclay* v. *Blodgett,* 5 *Cowen,* 202; *Pattison* v. *Hull,* 9 *Cowen,* 747; *Cutler* v. *Haven,* 8 *Pick.* 490; *Crane* v. *March,* 4 *Pick.* 131. Therefore when *Bradley* indorsed the note to the Bank, he parted with the stumpage to the Bank, to the amount of the note. The order was conditional, that *Weston* should see the amount paid indorsed on this note. It was accepted on no other terms. *Bradley* was not entitled to the money from the *Attian Association,* but by indorsing it on this note, and thereby freeing them from their obligation to the makers of the note to take it up. To hold the money by this process, would be to make the Association pay *Bradley's* debt to *Chase,* without discharging their liability to *Underwood, Davis* and *Colby,* or the liability of the latter to pay the note themselves. Even if the money had gone into *Bradley's* hands, equity would compel him to pay it to the Bank. The condition upon which the stumpage was to be paid to *Bradley,* its indorsement upon the note, has not even yet been complied with, nor can it be by him, as the note is not in his hands, and the supposed trustees must be discharged. *Davis* v. *Ham,* 3 *Mass. R.* 33; *Frothingham* v. *Haley, ib.* 68; *Willard* v. *Sheafe,* 4 *Mass. R.* 238. They cannot be holden in consequence of the second order, because by the true *Kennebec* survey, the stumpage, where cut, did not amount to enough to pay the first; and because but a small portion of enough to pay the first order, had come to the booms, when the process was served. Until it had come to the booms, or until at least seven eighths of it had come there, it was wholly contingent whether they would ever have to pay for it. And while it remains contingent, whether any thing is to be paid at any time, the same cases show, that the trustees cannot be holden. The supposed trustees may make the affidavit of another person a part of their answers, if they are willing to swear that they believe it is true. *Kelly* v. *Bowman,* 12 *Pick.* 383. *Clay, Jewell* and *Dinsmore,* are but contractors under *Weston* in relation to the timber, and are not accountable to the *Association,* or to *Bradley.* But it is enough, that if *Weston* is not holden, they cannot be.

94OXFORD.

ChaseChase *v.* Bradley.

The opinion of the Court was by

WESTON C. J. — The question submitted to our consideration is, whether the supposed trustees, or either of them, at the time of the service of the plaintiff's writ upon them, had in their hands and possession any goods, effects or credits of the principal debtor. And this must be determined upon the respective disclosures, and the documents referred to and copied therein.

The plaintiff claims to charge them, upon the contract made by *William Weston*, with the trustees or directors of the *Attian Land Association*, his operations under it, and the assignment of the sums to which they were entitled to *John Bradley*, the principal debtor. If there was no assignment, or none, the benefit of which *Bradley* was entitled to receive, at the time of the service of the writ, the trustees are entitled to be discharged.

An assignment from that association is disclosed; but it is manifestly and on its face, a conditional one, and as such was adopted and accepted. The evidence of the assignment is an order, drawn on the eighteenth of *April*, 1837, in behalf of the association, on *Weston*, directing him to pay to *Bradley*, fifteen thousand dollars, out of the proceeds of the logs, cut under the contract, provided however, he shall see that whatever sums, he shall pay said *Bradley*, and take a receipt therefor, are indorsed upon a certain note described. *Weston* accepted the order, upon the terms prescribed. The company might have very good reasons for requiring the condition upon which they insisted. It might be necessary for their protection. It qualified the assignment, and was made essential to its validity. It determined the condition upon which alone *Weston* was authorized to pay *Bradley*, or *Bradley* was entitled to receive payment.

From the affidavit of *Messrs. Fessenden & Deblois*, which is adopted and made part of the disclosures, it appears, that before the service of the plaintiff's writ, *Bradley* had negotiated the note described in the order, and that it passed to, and became the property of the *Oriental Bank*, and was in the hands of *Fessenden & Deblois*, as their attorneys. By the protest of the notary, it appears to have been negotiated before its maturity. But that fact is not essential. If it ceased to be *Bradley's* property before the service of the writ, he was no longer entitled to receive the

Chase *v.* Bradley.

money under the order, not being able to comply with the condi-tion it contained.    It results, that the right of *Bradley*, in virtue of the order, was gone, when he negotiated the note.    Whether the indorsees of the note are entitled to the benefit of the order, as an attendant or accompanying security, is a question, which need not be decided.    It is sufficient to defeat the plaintiff's attachment of their debtor's credits, in the hands of the supposed trustees, if, when it was made, their debtor had none, which could be made available.

It is however insisted, that the trustees ought to be charged, in virtue of orders subsequently drawn on *Weston*, in behalf of the association.

*Weston* discloses a further order drawn upon him by them, re-quiring him to pay to *Bradley*, without condition, the further sum of $1573, being the balance assumed to be due from *Weston*, be-yond the amount of the former order of fifteen thousand dollars. And he states, that no other order or orders from them in favor of *Bradley*, have ever been presented to, or accepted by him.    The disclosure of *Bradbury T. Dinsmore* refers to another order in the possession of *Bradley*, which had not been presented or accepted, and which therefore could create no liability on the part of *Weston.*

*Weston* in his disclosure, denies, that under the contract, any balance could arise against him, beyond the fifteen thousand dollars, upon which the second order could operate.    There might be a balance, according to the survey made by *Samuel F. Weston.* That survey, *Weston*, the supposed trustee, insists is erroneous, the surveyor being ignorant and unskilful, and not conforming to the *Kennebec* survey, which the contract adopts.    *Samuel F. Weston's* survey was not conclusive upon the trustee, unless made according to the *Kennebec* survey.    The trustee is bound at his peril to state the facts truly, and upon the question before us, the disclosure must be taken to be true.    Upon a trial between the *Attian Land As-sociation* and *William Weston*, the jury might be of opinion, that *Samuel F. Weston* did conform to the *Kennebec* survey; and if so, his estimate was to be conclusive.    Unless this was the fact, the supposed trustee was not under the contract bound by his survey. He undertakes to state in his disclosure that the fact was otherwise, and as has been before stated, the truth of the disclosure must be assumed, as the basis of our decision.    It is not therefore shown,

that *Bradley* had any rights or credits under the second order, subject to the plaintiff's attachment. And upon the whole it does not appear to us, that either of the trustees had, at the time of the service of the writ, any goods, effects or credits, subject to the plaintiff's attachment.

*Trustees discharged.*